Good afternoon, Your Honors. May it please the Court, Rachel Chung for Petitioner Jose Gonzalez-Martinez, and I'd like to reserve three minutes of my time, please. Mr. Martinez is a longtime U.S. resident whose mother brought him to the U.S. when he was just one year old. He obtained, but then lost, his lawful permanent residence status, was subsequently applied for asylum and Convention Against Torture relief after suffering repeated harassment and extortion by the police and being targeted by the Zetas cartel after he learned details about their illegal gas and drug trafficking operations through his employer. Counsel, I appreciate the facts. We have read the breach, of course, in which you recite those, but I guess my first question to you would be on the particularly serious crime argument. Aren't you just asking us to reweigh the evidence that was done by the IJ? We're not, Your Honor. We're asking you to confirm that the IJ properly applied the standard. So the agency is required to apply the three prongs. The one issue here is the facts and circumstances underlying the crime. This court has reiterated that because the particularly serious crime determination is so specific and has such great consequence, that the agency has to provide a reasoned explanation for why it is making this decision that it is. Counsel, let me just ask you, what specific factors did the agency rely on that you think were inappropriate? And what specific evidence did the agency rely on that you think was improper? We're not contending, Your Honor, that the agency relied on improper evidence, but rather that the agency omitted to rely on key and potentially dispositive evidence. So here, that would be Mr. Martinez's role in the crime, and specifically the fact that he had no foreknowledge of his passenger's plan to commit the robbery. That's a fact that's not mentioned in either the BIA or the IJ decision. And together with Mr. Martinez's limited role as the driver, that's something that would be dispositive, or excuse me, could be dispositive. Counsel, to get back to my other question, you said we're not asking to reweigh the evidence, but we really are being asked to do that, are we not? Because you're saying, well, he didn't really know what was going to happen. He didn't know what they were going to do and so on. And yet the IJ, at least according to what I read, considered all those things. You just don't like the way it came out. Isn't that what we're dealing with here? Well, Your Honor, the IJ did not discuss the fact that Mr. Martinez had no foreknowledge of the reliable facts and circumstances, as this court has required it to do, that we're asking this court to- Was he not convicted in a criminal court, though, of having done exactly what he went to jail for? He did plead guilty, yes. Okay, so it's basically almost like a collateral attack, in effect. The IJ looked at the record, considered what was done, concluded that the requisite mens rea was found. And you're saying, no, that's not right. It wasn't that bad. So that's why I say, are you not asking us to simply reweigh the evidence? Well, no, Your Honor. And without getting into the particulars of, I believe it's California Penal Code 211, the robbery and mens rea, and what's required for that specific conviction, what we are asking the court to do here is make sure that the agency properly applied the legal standard that it's required to apply, and that is to consider all evidence that the applicant submits. And specifically, what evidence did the BIA not consider? The fact that Mr. Martinez had no foreknowledge of the robbery plan. Well, getting back to Judge Smith's question, then, isn't one of the elements of the offense he's convicted of that he knows he's participating in that offense? I believe it is, yes. But that would be distinct, Your Honor, from advanced knowledge, for example, like setting out on this drive that they were on with the advanced intent to commit a robbery. This court has reiterated that- Well, let me interrupt you, though. I apologize, but that's not one of the elements. When he makes a decision to join in this robbery, are you saying it makes it less significant if it's made before he goes in there than it is as it develops, he decides to participate? We're saying that's a fact that the IJ would need to consider. It's not for this court to consider in the first instance, and it's not something this court could consider in the first instance because the IJ didn't address it. So is it your position that no rational person could look at this evidence and conclude that the crime was particularly serious, or is it your position the agency needed to say more to explain how it reached its conclusion? The latter, Your Honor. What would it need to have said that it didn't say? Well, it would have needed to address that fact at all. And we're not necessarily saying, of course, that this court, or excuse me, that the agency would need to reach a certain outcome. But again, this court has required the agency to address all evidence and to provide a reasoned explanation. And certainly that would- With respect, maybe we're looking at demarcation law. But I have always understood that what you're asking us to do is something quite different than, say, what we have in the criminal setting for a 3553A analysis. The court assumes that the district judge considers all six factors, but doesn't have to go through and name every single one of them. Do I understand you correctly to say that in this setting, the IJ, in order to avoid error, literally had to go through every element of the crime for which your client was convicted? Failing to do so, or failing to consider anything, even what it wasn't considered below, is fatal and we have to send it back. Is that your position? Not quite, Your Honor. Our position is that, excuse me, the IJ is required, based on this court's precedent, to go through, it's not all of the elements of the crime, but all of the reliable evidence that the applicant submits that could potentially weigh on the particularly serious crime determination. That's not necessarily- That the petitioner submits as opposed to what the record below showed? Yes. Yes. The IJ is required to consider evidence that was outside the record of conviction if the  petitioner submits, regardless of the fact that, in this case, your client was convicted and went to prison. It's what your client submits of whatever nature that he or she thinks would change the opinion of the IJ. That's what we're supposed to weigh? That's what this court's case law requires, yes. Which case do you refer to in particular that says that, according to your view? Gomez-Sanchez requires the agency to consider all reliable evidence. All reliable evidence. How do we determine what is reliable? That could certainly be- Essentially, a new trial? You're going back to reconvict this person? No, not necessarily. We could debate what is reliable, but this court can't address, potentially, even the question of what's reliable if the agency didn't address all the required facts. As I understand it, he started out talking about the required facts being that he was a The fact that he was a driver was mentioned in the decision, wasn't it? It is, but the agency didn't necessarily provide a detailed or sufficiently recent explanation, purely based on the fact that that fact could be so dispositive for the outcome of the particularly serious crime determination. What would you expect the agency to put in the opinion that would satisfy your position? To sufficiently explain why all of the other factors in the agency's view. Well, that's what they found. But again, they did not address the fact that Mr. Martinez had no foreknowledge of the offense. So we're down to the only real factual issue that the agency should have addressed that didn't address is the no foreknowledge then. Is that true? That's the main issue, yes, related to his role as a driver. Are you saying, you're from D.C., right? Yes. We appreciate your, I guess, assume this is a pro bono situation. It is. Thank you for that. It's interesting to me. We get, for example, gang-related crimes appealed all the time. There's rarely any direct evidence about the mens rea of the people who are convicted. They'll many times have an expert in gang language. Somebody talked to somebody, what they said, and so on. And that is what used to make up a background for mens rea. But it seems to me you're literally asking us to retry this. Your client is going to bring in evidence that he thinks would change the result of what happened in an actual trial. Isn't that what you're asking? It's not, Your Honor. We're asking the court, so this court has reiterated that it's not just the facts of conviction that are allowed to come in. It's additional evidence that's presented. So certainly we're not debating or we're not contesting the existence of this conviction. We're just asking the court to make sure that the agency applied the correct legal standard by considering not just the fact of conviction and whatever might have been in that record, but the additional evidence that's presented on the immigration record. If the court doesn't have any other questions on this topic, I'd like to make sure that with the remainder of my time,  First and foremost among them is that the agency failed to consider the aggregate risk that Mr. Martinez faces of torture if he is returned to Mexico. That's for two reasons. First, the IJ did not address Mr. Martinez's risk of future torture. If you look at addendum 20 and 21, the IJ did discuss, excuse me, his risk of future torture specifically by the police. The IJ concluded that Mr. Martinez did not suffer past torture at the hands of the police or anyone else. It recognized that it must consider state acquiescence in any future torture that Mr. Martinez might suffer, and then it conducted that acquiescence analysis. But nowhere in its opinion did the IJ actually make a conclusion that Mr. Martinez has no risk or has not met his burden to show that he is more likely than not to be tortured by the police if he's returned to Mexico. That's startling to me. He ruled against your client based on the cat claim. He went through and pointed out that the police themselves, the genuine police, never charged him, never beat him, and so on. There were apparently four people that accosted him at a point, beat his legs and so on, and they weren't police. So how can you say that the IJ did not make a determination that there was no substantial evidence on your client's part to buttress his claim, but there was on the other side? Correct that those individuals were not police, Your Honor, but there was evidence, there is evidence in the record of incidents by actual police harassing and extorting Mr. Martinez. Extorting is a different thing than torture, as you well know. We have, sadly, that kind of case all the time.  So what are you referring to specifically where you think your client suffered past torture? I saw nothing in the record to substantiate that. We don't contend that Mr. Martinez suffered past torture, but we do contend that he faces a risk of future torture by the police. And you base that on? On the harassment he has faced from the police in the past, as well as the threat he faced from the police in Tijuana. But what he faced was an extortion demand, right? They didn't beat him up or anything, did they? They did not. They just said, you know, once you pass a cuenta, we're going to, you know, we're going to go out and do whatever. But they didn't hit him, they didn't do anything to him personally. They did not physically hit him. Torture is not limited to physical crimes. And again, I point the court to the evidence in the record that the police in Tijuana did threaten Mr. Martinez. Threats certainly can be considered torture. And whether or not this evidence amounts to torture is a determination that the IJ would need to make in the first place, and it didn't do so here. The BIA concluded otherwise, but that introduces the possibility of another error, excuse me, another error that the IJ did make. So the BIA concluded that the IJ properly addressed both Mr. Martinez's risk of torture from the police and his risk of torture from the Zetas. If that is true, then the IJ separately committed legal error by failing to aggregate Mr. Martinez's risk of torture from all sources. We know that because the IJ relied on matter of JFF to aggregate Mr. Martinez's risk. And that applies only where there is one chain of hypothetical events or one theory of torture that the applicant presents. But here there were two, the agency failed to address that. And that is reversible error. If the court has no more questions, I'd like to, I want to make sure I reserve the rest of my time. I'm going to mention that. Thank you. May it please the court. My name is Christina Zeidman. I represent the Attorney General. Your Honor, we ask the court to deny this petition for review. First, I want to dispute what opposing counsel said about Mr. Gonzalez-Martinez not having foreknowledge of this crime. Mr. Gonzalez-Martinez was convicted for being the getaway driver. And even if he did not know when individuals left his car, that they were going to commit robbery, he certainly knew that once they got back into his car and he saw that they had committed robbery. And so that is, that is, that is my response to that argument. Where is that in the record? In the record, the Mr. Gonzalez-Martinez discussed that, he discussed that he did not leave, he discussed that he did not leave the car whenever he, and he didn't deny that he had knowledge really. Where's that in the record? It'd be in the transcript. Because he says he didn't know they were going to commit a robbery. He was driving the car. He was only 18. Right. And so he, he says that, but he, but then they did witness the robbery. He doesn't explicitly say that, but he doesn't deny that either. And he says that he received, he said that he received a cut of the money. He said that he had details of the robbery. He said that he knew the participants. He said that he knew that they used fake weapons. And so it's, I believe it's implied, even though it's not explicitly stated. How do you respond to the argument that he didn't have advanced notice of the robbery and therefore the IJ should have considered that issue and considering whether all the circumstances and facts of the case? We, I mean, our response is that it's not relevant to his being the getaway driver after the fact, and that that's the behavior that he was convicted under. But you do know that many states have changed their laws, such that the getaway driver is no longer provided he didn't have any knowledge that, you know, necessarily liable under felony murder rule. I mean, it is considered a lesser role if you're merely the getaway driver. For example, the BIA here says that this is a crime against the person, but he didn't really commit the crime against the person. He wasn't, didn't participate in the actual robbery. Shouldn't the BIA have considered that? Your Honor, that is, we argue that that's a judgment call. The idea that Mr. Gonzalez Martinez had played a minor role as a participant in this robbery, we would argue that that's subjective. And even if other states have changed their laws after the fact, that's, he was convicted of robbery here. The BIA's own decision that controls the standard matter of NAM? Says you look at this on a case by case basis and you look to the circumstances and underlying facts of the conviction and whether the type and circumstances of the crime indicate that the alien will be a danger to the community. Where did the BIA do that here? Consider, given all these circumstances, whether the petitioner would be a danger to the community in the future. So Your Honor, actually the consideration of whether the petitioner would be a danger to the community isn't, and it's determined by looking at the facts and circumstances, but it's the agency, I don't believe has to make a predictive finding there. And so that's, that becomes something that is satisfied by the other three NAM factors. And so it's not a separate factor. It looks like it's a separate factor. And whether the type and circumstances of the crime indicate the alien will be a danger to the community. And it actually, it does look like the, I mean, we would argue that the agency did consider that because the agency did point out that Mr. Gonzalez-Martinez was remorseful, but also the immigration judge considered that Mr. Gonzalez-Martinez did not turn himself in, that the only reason he was caught for this crime is that a witness noticed his license plate and wrote down his license plate number, and that the police investigated and found out that it was his car that was being used. And so the agency did consider, the agency did consider basically that his involvement was only noticed because of someone else. And what does that have to do with whether or not he will be a danger to the community? Well, what that would have to do, what it would have to do with that is that basically Mr. Gonzalez-Martinez didn't turn himself in. And so it shows that he, at that, it shows that he, it basically shows that he did not, he intended to get away with this crime, essentially. Your opposing counsel, of course, makes the argument in effect that the IJ, and later the BIA, basically have to tick off all of the elements of the crime in effect, and she's focused primarily on mens rea, and says that if that is not done, that we have to send this back to the BIA, and presumably to the IJ. What's your response to that? And our response is that the mens rea was considered in this case, and also that the immigration judge only needed to consider relevant evidence. Like my colleague said, where in the record would you refer the court so we could look and see exactly what the IJ did? What page numbers? So, of the immigration judge's decision, the fifth and sixth pages, and as well as where the immigration judge makes the particularly serious crime finding. The pages, I'm sorry. What pages of the record? Let me look at the... And another, by the way, are we supposed to be reviewing the BIA opinion here, or the IJ's opinion? We posit that we can review both in this case, because the board referenced the immigration judge's, to the extent that the board adopted the immigration judge's findings, and it appears that that is what occurred here, because the board made references to agreeing with the immigration judge. The pages of the record that I would refer the court to are pages 97 through 100 of the immigration, in the record. And do you believe that on those pages that the mens rea discussion is fully laid out? Is that correct? Yes, to the extent that relevant facts are noted, yes, we do. But from the government's perspective, sufficiently to show that the petitioner had the mens rea to be involved in this crime. He knew he wasn't just going out to get a Dairy Queen. He was going to go help some people, and they were going to perform a crime. And when he got back in the car, he saw what they had, what they've done. That's your position? That is our position, is that he, at least by the time they got back into his car, he knew what had taken place, and he acted as the getaway driver. And he got part of the money, right? He was not 100% clear, but well, we believe that he said he did get part of the money, but it was not very much money. He did not remember how much. So if he went, to use your opponent's perspective, if he went there and thought he was going there- Wait a second, counsel. I think you're misquoting the record. He says, respondent's testimony was that the three individuals possessed fake guns and stole money from the individual. Respondent could not identify how much, but believed it was not very much money. He doesn't say he got any money. I apologize, your honor. Yeah, I think we're being a little fast and loose with the record here. I apologize, your honor. I believe he wasn't sure if he'd gotten some of the money. I wasn't sure. No, he doesn't say anything about him getting money. All right. All right, I'm sorry. I didn't mean to- No, no, no, it's fine, it's fine, it's fine. I think we should have a correct record. And I have one last question on that. Did you just say that the record shows that he did have foreknowledge that a robbery was going to occur? That's not the contention. The contention is at least by the time they got back into his car, he knew that a robbery had occurred. Does that not change the analysis a little bit, though? I mean, if these were friends, and that's what the record seems to imply, they could have gone out, they could have been looking for trouble, but nothing in particular. He didn't know anything was going to happen. They take off and come back, and only then does he realize that a crime has been committed. Is that what you're suggesting? Well, Your Honor, he was found credible, and so we don't want to withdraw from that credibility finding. The immigration judge did not rely on him having foreknowledge or not having foreknowledge, so that's not a mistake that was made. If he did not have foreknowledge, and in fact what you're saying is that he was convicted in the state of a crime, but they shouldn't have found mens rea because he didn't have foreknowledge. Is that what you're saying? No, Your Honor. We're not here to second guess the fact of conviction. Right, but when the BIA and the IJ analyze whether on a case-by-case basis, whether or not this is a particularly serious crime, the BIA doesn't just look at, oh, he pled guilty to this crime, which has an intent element. The BIA is supposed to go back and look at all the facts and circumstances, including the degree of knowledge and the amount of culpability of this crime. This is a very serious thing. It denies him eligibility for both asylum and withholding. Which is why he resorts to the CAD claim, but it's a pretty serious determination. And all of these circumstances need to be considered. Our contention is that all of the relevant circumstances were considered and weighed. But you can't point to any place in the IJ or BIA decision where they considered the and his friends go out and he was only 18. They were obviously older and they went out and robbed someone with, he says, fake guns and you deemed him credible. I'm not sure if it's clear that they were necessarily older. But basically what the immigration judge did consider is that, I mean, the immigration  judge considered that Mr. Gonzalez-Martinez acted as the getaway driver and stated that fact explicitly. The immigration judge considered that Mr. Gonzalez- You're not very clear at this argument today as to what point in time Mr. Gonzalez-Martinez became a getaway driver. Did he know he was going to be a getaway driver in advance? There's nothing on the record on this. Well, Your Honor, it just doesn't, there's not- Did he agree to go out and commit a robbery and drive his friends there and back? He says that his friends committed a robbery and that he drove them there and back. And so basically- But he drove them there for the purpose of them committing a robbery? He says that? He doesn't say that he- Before you say yes, you better have a place in the record where it says that. No, he doesn't say that he knew that they were going to commit a robbery and he says that he doesn't know that they were going to commit a robbery, but he drove them there and then he certainly didn't leave them in the lurch once they committed the robbery. Right, but you would agree that that makes someone less culpable than someone who intended to go out and participate in the robbery and intended to serve as a role in that robbery as the getaway driver. Do you have to agree that that's a slightly less culpable situation? Your Honor, our argument is that that's a subjective judgment call. Because Mr. Gonzalez-Martinez was- Maybe it is, but it's not even mentioned in the BIA decision. So how do we know that the BIA exercise is subjective judgment as to that issue? Well, so on the abuse of discretion standard, basically this court cannot reweigh the evidence- That is true. I'm just saying we have to look at what the BIA did and not reweigh it. We would have to send it back and say, did you consider this factor and in your subjective judgment reject this factor? Well, what we are arguing is that the board did not have to make the subjective judgment call that this was a minor role. Why not? Because that's not a fact. It's a judgment call. The board only needs to consider- It is a fact. The board is supposed to consider the circumstances and underlying facts of the conviction, and that is a fact. The fact is that Mr. Gonzalez-Martinez served as the getaway driver, but the role that he the idea that his role was minor is a judgment call and not a fact. We're not just talking about minor role. We're talking about when he formed the intent to become the getaway. Did he drive him there for the purpose of having a robbery? He says no, and you agree with that. Actually, your whole argument was you agree with that, but he knew of the robbery when he drove them away. That's been your argument that you've been making, right? Under the record, that's what it seems the record can support. Right, and so did the BIA consider that fact? It does not appear that the board recited that fact. Does the board make a determination whether this is a particularly serious crime strictly based upon what he was convicted of before and the elements of that crime, or do they have to look at the record, as my colleague and we've all suggested here, and find in that record the elements required to make it a particularly serious crime? Well, they have to do both. They have to look at the elements, and then they have to look at the facts and circumstances, and we contend that they did both, in fact, here. The board also didn't just state that he was the getaway driver. The board said that he did not use a weapon, and the immigration judge before had said that the weapons that were used were fake. The immigration judge recited very many facts in that, you know, facts and circumstances of the crime. We've taken you over your time, but maybe you should just briefly address the Catt claim. Yes, your honor. Our contention is that substantial evidence supports the Catt determination, and so one of the arguments that opposing counsel has made is that matter of JFF was cited wrongly, and so, of course, this court's decision in Velasquez-Semihoa v. Garland was not available whenever the board made its decision here, but our contention is that it was proper for this case, despite the fact that the petitioner posited more than one theory of torture, because this court did not say in Velasquez-Semihoa that it was improper in all cases for matter of JFF to be cited in that context of multiple theories, but this court actually quoted Medina Rodriguez v. Barr, which is a case where matter of JFF was cited appropriately, and matter of JFF, a Catt determination cannot rely on a string of suppositions, but basically, and this court favorably cited in Velasquez-Semihoa, it favorably cited Medina Rodriguez v. Barr to determine that matter of JFF was properly cited there, despite the petitioner there positing multiple theories of torture. All right, any further questions? Okay, thank you, counsel, and thank you for coming out in D.C. to appear. I'd like to make a couple points on rebuttal, Your Honors. First, it seems no one, there is no debate that all throughout our criminal legal system, foreknowledge can address the culpability, the fact that there's so much back and forth today about whether and how much this fact should matter only goes to show that it is potentially relevant. Counsel, let me ask you this. Your opposing counsel almost seems to concede there was no foreknowledge, but there clearly was knowledge after they came back in the car. Do you deny that? No. And given the fact that he took them away, helped them escape, would not have been found, but for somebody seeing the license and so on, doesn't that constitute mens rea sufficient that the I.J. could have determined this is darn serious? He knew he was driving away, helping these guys escape, that's enough. It certainly could, but the fact that Mr. Martinez had no foreknowledge in this case is a fact that the I.J. should have considered so that the I.J., rather than this court or much, the foreknowledge versus the knowledge only after the robbery has occurred matters. Turning to the cat claim, opposing counsel pointed out that Velasquez-Samoa postdates the agency proceedings in this case, but that case did not announce a new rule. There are many cases, including Cole and Quijada-Aguilar, that predate the agency proceedings in this case, in which this court made very clear that matter of JFF only applies where there's a risk of torture from purely one theory. This case is distinguishable from other cases in which this court has upheld the use of JFF in multi-theory cases. In those cases, for example, the I.J. determined that there was no risk from one of the theories, leaving the other theory as the only one presenting a live risk. Here, the I.J. only determined, I see my time is up, I could just conclude. Yes, I gave the other side time. Okay, thank you, Your Honor. Conclude. Here, the I.J. and the agency made no determination that Mr. Martinez faces zero risk of torture from either of his theories. It only concluded that he didn't meet his 50% burden. That goes to show that Mr. Martinez has two live theories of potential torture if he's returned to Mexico. The I.J. needs to not only consider both of them, but then properly aggregate the risk so that Mr. Martinez's ultimate cat burden is 50% from all sources, not 50% from each source. All right, any further questions? Okay, thank you, counsel. And I want to thank O'Melveny and Myers and Ms. Chung for taking on this pro bono representation today. And yes, thank you. Yeah, but we're both alumni. O'Melveny and Myers. It will have nothing to do with the case. It has nothing to do with the case, and a long time ago. That's right. There's a plane outside that's going to take us to a hunting lodge. Oh, you weren't supposed to tell them. Okay, Gonzalez-Martinez versus Garland will be submitted, and we'll take up Roth versus Forrest Ventures.
judges: WARDLAW, SMITH, Rayes